UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

CLARENCE MCNAIR,

                Plaintiff,

v.

R. KERSTEN, *et al.*,

                Defendants.

Case No. 3:16-cv-00038-RCJ-WGC

**REPORT & RECOMMENDATION OF U.S. MAGISTRATE JUDGE**

       This Report and Recommendation is made to the Honorable Robert C. Jones, United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and the Local Rules of Practice, LR 1B 1-4.

       Before the court is defendant Kersten's Motion for Summary Judgment. (ECF No. 16; Exhibits at ECF Nos. 16-1, 16-2, 16-3.) Plaintiff filed a response (ECF No. 18) and Kersten filed a reply (ECF No. 19). In his motion, Kersten argues that Plaintiff failed to properly exhaust available administrative remedies. Plaintiff subsequently filed a document that he titled a "cross-motion for summary judgment," but it also addresses whether he properly exhausted administrative remedies and whether those remedies were available. (ECF No. 21.) The document largely repeats the argument made in his response to Kersten's motion. (ECF No. 21.)

       The cross-motion states that it is made pursuant to Rules 56(e) and 56(f). (ECF No. 21 at 1.) Federal Rule of Civil Procedure 56(e) addresses what the court's options are when a "party fails to properly support an assertion or fact or fails to properly address another party's assertion of fact as required by Rule 56(c)." Fed. R. Civ. P. 56(e). The court can: (1) give the party the opportunity to properly support or oppose the fact; (2) consider the fact undisputed; (3) grant summary judgment if the undisputed facts show that is appropriate; or (4) issue any other appropriate order. Fed. R. Civ. P. 56(e)(1)-(4). Rule 56(f) provides that the court may, *independent of a motion for summary judgment filed by a party,* and after giving notice and a

reasonable time to respond: "(1) grant summary judgment for a nonmovant; (2) grant the motion on grounds not raised by a party; or (3) consider summary judgment on its own after identifying for the parties' material facts that may not be genuinely in dispute." Fed. R. Civ. P. 56(f)(1)-(3). Rule 56(f) is not applicable here. Therefore, the court construes Plaintiff's filing (ECF No. 21) as Plaintiff's effort to properly further address the assertions of fact made in Kersten's motion for summary judgment under Rule 56(e)(1), and the court has considered it as such in addressing Kersten's motion.

After a thorough review, the court recommends that Kersten's motion be granted.

### I. BACKGROUND

Plaintiff is an inmate in the custody of the Nevada Department of Corrections (NDOC), proceeding pro se with this action pursuant to 42 U.S.C. § 1983. (Pl.'s Am. Compl., ECF No. 6.) The events giving rise to this action took place while Plaintiff was housed at Northern Nevada Correctional Center (NNCC). (*Id*.) Defendant is Robert Kersten.

On screening, Plaintiff was allowed to proceed with an Eighth Amendment claim of deliberate indifference as well as a First Amendment retaliation claim against Kersten. (Screening Order, ECF No. 7.) The claims are based on allegations that after Plaintiff was interviewed by an agent from the Inspector General's Office concerning a sexual harassment complaint Plaintiff had previously filed against Kersten under Prison Rape Elimination Act (PREA), Kersten searched Plaintiff, shoved him, and called him a "handicapped homo," "rat" and "snitch" in front of other inmates, and warned him against filing any more civil complaints. He alleges he has since been the target of violent from other inmates who reference Kersten's words.

Kersten moves for summary judgment arguing that Plaintiff failed to properly exhaust his administrative remedies relative to the claims proceeding in this action.

### II. LEGAL STANDARD

"The purpose of summary judgment is to avoid unnecessary trials when there is no dispute as to the facts before the court." *Northwest Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994) (citation omitted). In considering a motion for summary

judgment, all reasonable inferences are drawn in favor of the non-moving party. *In re Slatkin*, 525 F.3d 805, 810 (9th Cir. 2008) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). On the other hand, where reasonable minds could differ on the material facts at issue, summary judgment is not appropriate. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1)(A), (B).

If a party relies on an affidavit or declaration to support or oppose a motion, it "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4).

In evaluating whether or not summary judgment is appropriate, three steps are necessary: (1) determining whether a fact is material; (2) determining whether there is a genuine dispute as to a material fact; and (3) considering the evidence in light of the appropriate standard of proof. *See Anderson*, 477 U.S. at 248-250. As to materiality, only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment; factual disputes which are irrelevant or unnecessary will not be considered. *Id*. at 248.

In deciding a motion for summary judgment, the court applies a burden-shifting analysis. "When the party moving for summary judgment would bear the burden of proof at trial, 'it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial.'...In such a case, the moving party has the initial burden of establishing

the absence of a genuine [dispute] of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (internal citations omitted). In contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *See Celotex Corp. v. Cartrett*, 477 U.S. 317, 323-25 (1986).

If the moving party satisfies its initial burden, the burden shifts to the opposing party to establish that a genuine dispute exists as to a material fact. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). To establish the existence of a genuine dispute of material fact, the opposing party need not establish a genuine dispute of material fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987) (quotation marks and citation omitted). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation omitted). The nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *Id*. Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine dispute of material fact for trial. *Celotex*, 477 U.S. at 324.

> That being said,
> [i]f a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may: (1) give an opportunity to properly support or address the fact; (2) consider the fact undisputed for purposes of the motion; (3) grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it; or (4) issue any other appropriate order.

Fed. R. Civ. P. 56(e).

At summary judgment, the court's function is not to weigh the evidence and determine the truth but to determine whether there is a genuine dispute of material fact for trial. *See Anderson*, 477 U.S. at 249. While the evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn in its favor," if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted. *Id*. at 249-50 (citations omitted).

### III. DISCUSSION

**A. Exhaustion Standard**

The Prison Litigation Reform Act (PLRA) provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). An inmate must exhaust his administrative remedies irrespective of the forms of relief sought and offered through administrative avenues. *Booth v. Churner*, 532 U.S. 731, 741 (2001).

The failure to exhaust administrative remedies is "'an affirmative defense the defendant must plead and prove.'" *Albino v. Baca*, 747 F.3d 1162, 1166 (9th Cir. 2014) (quoting *Jones v. Bock*, 549 U.S. 199, 204, 216 (2007)), *cert. denied.*, 135 S.Ct. 403 (Oct. 20, 2014). Unless the failure to exhaust is clear from the face of the complaint, the defense must be raised in a motion for summary judgment. *See id*. (*overruling in part Wyatt v. Terhune*, 315 F.3d 1108, 1119 (9th Cir. 2003)).

As such: "If undisputed evidence viewed in the light most favorable to the prisoner shows a failure to exhaust, a defendant is entitled to summary judgment under Rule 56. If material facts are disputed, summary judgment should be denied, and the district judge rather than a jury should determine the facts [in a preliminary proceeding]." *Id*., 1168, 1170-71 (citations omitted). "Exhaustion should be decided, if feasible, before reaching the merits of a prisoner's claim. If discovery is appropriate, the district court may in its discretion limit discovery to evidence concerning exhaustion, leaving until later—if it becomes

necessary—discovery related to the merits of the suit." *Id*. at 1170 (citation omitted). If there are disputed factual questions, they "should be decided at the very beginning of the litigation." *Id*. at 1171.

Once a defendant shows that the plaintiff did not exhaust available administrative remedies, the burden shifts to the plaintiff "to come forward with evidence showing that there is something in this particular case that made the existing and generally available administrative remedies effectively unavailable to him." *Id*. at 1172 (citations omitted). The ultimate burden of proof, however, remains with the defendant. *Id*.

Exhaustion cannot be satisfied by filing an untimely or otherwise procedurally infirm grievance; rather, the PLRA requires "proper exhaustion." *Woodford v. Ngo*, 548 U.S. 81, 89 (2006). "Proper exhaustion" refers to "using all steps the agency holds out, and doing so *properly* (so that the agency addresses the issue on the merits)." *Id*. (citation omitted). Thus, "[s]ection 1997e(a) requires an inmate not only to pursue every available step of the prison grievance process but also to adhere to the 'critical procedural rules' of that process." *Reyes v. Smith*, 810 F.3d 654, 657 (9th Cir. 2016) (quoting *Woodford v. Ngo*, 548 U.S. 81, 90 (2006)). "[I]t is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Jones*, 549 U.S. at 218. That being said, an inmate exhausts available remedies "under the PLRA despite failing to comply with a procedural rule if prison officials ignore the procedural problem and render a decision on the merits of the grievance at each available step of the administrative process." *Reyes*, 810 F.3d at 658.

To reiterate, an inmate need only exhaust "available" administrative remedies. *See Ross v. Blake*, 136 S.Ct. 1850, 1858 (2016). "Accordingly, an inmate is required to exhaust those, but only those, grievance procedures that are 'capable of use' to obtain 'some relief for the action complained of.'" *Id*. at 1859 (quoting *Booth*, 532 U.S. at 738).

/ / /
/ / /
/ / /

If the court concludes that administrative remedies have not been properly exhausted, the unexhausted claim(s) should be dismissed without prejudice. *Wyatt*, 315 F.3d at 1120. If the court finds that the prisoner has exhausted available administrative remedies or that the administrative remedies were not available to him, the case may proceed on the merits. *Albino*, 747 F.3d at 1171.

**B. Administrative Remedies at NDOC**

Administrative Regulation (AR) 740 governs the inmate grievance process within NDOC. (ECF No. 16-1.) Inmates may use the procedure to resolve addressable inmate claims including civil rights claims. (*Id*. at 3, AR 740.03.1.) If an inmate is not able to resolve the issue informally through a discussion with the caseworker, the inmate must complete the grievance process through three levels of review: the informal, first and second levels. (*Id*. at 5-9.)

**C. Discussion**

**1. Grievance 20063003928**

It is undisputed that Plaintiff did file a grievance (number 20063003829) concerning his alleged July 1, 2015 interaction with Kersten, and took it through all levels of review. Kersten contends, however, that the grievance does not discuss the allegations proceeding in this action, *i.e.*, that Kersten labeled him a snitch in front of others and that Kersten shoved him and threatened him because he spoke to the Inspector General. (ECF No. 16 at 4-5.) In support of the motion, Kersten has filed NDOC's AR 740 which governs the inmate grievance process, as well as Plaintiff's inmate grievance history report. (ECF Nos. 16-1, 16-2.)[1]

In his response to Kersten's motion, Plaintiff acknowledges that he did not state that he was shoved or called a snitch or threatened in his grievance. (ECF No. 18 at 2.) He states that this is because he was, and still is, in fear of his life, and would have been retaliated against if he

---

[1] Kersten only provided the grievance history report, which summarizes inmate grievances and responses, instead of the actual grievance documentation. The court has previously instructed the Attorney General's Office that when it raises the affirmative defense of failure to exhaust administrative remedies it may submit this report, but should also submit the actual grievance documentation, as the summary frequently varies from or does not contain all of the information from the actual grievance. Here, the problem is obviated in light of Plaintiff's filing of the actual informal level grievance at issue with his response to the motion. Defense counsel is reminded that any future motion raising the failure to exhaust affirmative defense should be supported by the actual grievance documentation.

- 7 -

had included these things in his grievance. (*Id.*)

In the informal level of grievance 20063003829, Plaintiff stated that Kersten violated his Eighth and Fourteenth Amendment rights, harassed and retaliated against Plaintiff and abandoned his assigned post. (ECF No. 18 at 19.) Plaintiff claimed that on July 1, 2015, after leaving a conference with the Inspector General regarding a PREA complaint against Kersten, Plaintiff went to the gym and then went to his housing unit. (*Id*. at 20.) He was required to pass by Unit 3 where Kersten was working, and Kersten left his assigned post and ordered Plaintiff to stop. (*Id*.) Kersten asked Plaintiff where he was going. (*Id*.) Plaintiff responded that he was going back to his housing unit, and Kersten told Plaintiff that he would call the unit in twenty minutes to make sure Plaintiff was there. (*Id*. at 20-21.) "[A]t this point the conversation ended and Plaintiff proceeded to Unit 2." (*Id*. at 21.) Plaintiff went on to state in the grievance that it was his belief a phone call had been made to Kersten informing him that the Inspector General was on site to talk to Plaintiff regarding the pending PREA complaint Plaintiff had filed against Kersten, which prompted Kersten to look for and confront Plaintiff. (*Id*.) Plaintiff stated that this constituted a violation of his Eighth and Fourteenth Amendment rights as well as deliberate harassment and retaliation. (*Id*.) He asked that all retaliation and harassment by Kersten stop. (*Id*.) Again, there is no dispute that Plaintiff took this grievance through the first and second levels of review.

The court must now address whether Plaintiff properly grieved the claims that are proceeding in this action, and if not, whether the grievance process was otherwise available to Plaintiff.

**2. Proper Exhaustion**

As indicated above, the PLRA requires "proper exhaustion" which means "using all steps the agency holds out, and doing so *properly*[.]" *Woodford*, 548 U.S. at 89 (citation omitted) (emphasis original). The prison's requirements "define the boundaries of proper exhaustion." *Jones*, 549 U.S. at 218.

Concerning what level of detail a grievance must contain, AR 740 merely states that "[a]ll documentation and factual allegations available to the inmate must be submitted at [the

informal] level with the grievance." (ECF No. 16-1 at 7, AR 740.05.5.A.) Where the grievance system does not state the level of specificity required for exhaustion, the court requires the grievance to alert the prison to the nature of the wrong for which the redress is sought. *See Griffin v. Arpaio*, 557 F.3d 1117, 1120 (9th Cir. 2009).

In his First Amended Complaint, Plaintiff complained that after he met with the Inspector General's Office concerning his PREA complaint, Kersten shoved him, called him a "handicapped homo," called him a "rat" and "snitch" in front of other inmates and threatened him if he filed other complaints.

In the grievance, Plaintiff wrote that when he was going back to his housing unit, Kersten abandoned his post and proceeded to ask Plaintiff where he lived. (ECF No. 18 at 20.) Plaintiff responded that he lived in Unit 2, and Kersten asked him why he was out of his unit when it was not his yard day. (*Id*.) Plaintiff responded that he was there for wheelchair exercise. (*Id*.) Kersten then asked why Plaintiff was not in the gym. (*Id*.) Plaintiff said he was going back to his housing unit. (*Id*.) Kersten asked if he was sure, and Plaintiff responded "absolutely." (*Id*.) Kersten then warned Plaintiff he would call Unit 2 in twenty minutes and "Plaintiff had better be there." (*Id*. at 20-21.) Plaintiff then wrote in the grievance: "at this point the conversation ended and plaintiff proceeded to unit 2." *(Id.)* Plaintiff referenced the Eighth and Fourteenth Amendments, harassment and retaliation in the grievance, but made absolutely no mention of Kersten shoving him, calling him a "rat" or "snitch" or threatening him if he filed other complaints, all of which form the substantive basis of his claims and were essential to the court's determination that he be allowed to proceed with the Eighth Amendment and First Amendment retaliation claims in this action.

Accordingly, the court finds that the informal level grievance did not sufficiently put the prison on notice of "the nature of the wrong for which redress is sought." *Griffin*, 557 F.3d at 1120.

### 3. Availability of Administrative Remedies

The court must now address Plaintiff's argument that the grievance process was not available to him based on his contention that he did not include these details in the grievance

because he feared for his life and would have been retaliated against by Kersten. (*See* ECF No. 18 at 2.)

In *Ross v. Blake*, the Supreme Court rejected the Fourth Circuit's adoption of a "special circumstances" excuse for non-exhaustion that had been applied to a prisoner found to have made a reasonable mistake about the meaning of the prison's grievance procedures. *Ross*, 136 S.Ct. at 1858. The Supreme Court nevertheless pointed to a non-exhaustive list of circumstances where courts may conclude that administrative remedies are unavailable. *Id*. at 1858-1862. One of the instances discussed by the Supreme Court where the administrative process may be deemed unavailable to the inmate is "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation or intimidation" such as when prison officials threaten inmates "so as to prevent their use of otherwise proper procedures." *Id*. at 1860 (citations omitted).

In *McBride v. Lopez*, 807 F.3d 982 (9th Cir. 2015), the Ninth Circuit recognized that "fear of retaliation may be sufficient to render the inmate grievance procedure unavailable[.]" *McBride*, 807 F.3d at 984. In *McBride*, the inmate allegedly had an altercation with guards where he threw some sort of burning liquid into the eyes of a guard, and subsequently guards punched and kicked him, claiming they needed to use the force to subdue McBride. *McBride*, 807 F.3d at 985. McBride was placed in administrative segregation and claimed that two of the defendant guards involved came by and told him he was "lucky" and his injuries "could have been much worse." *Id*. He took this as a threat and claimed he did not immediately file his grievance concerning excessive force out of fear of retaliation. *Id*. When he eventually filed the grievance, it was two months late. *Id*. When he filed his section 1983 action, he attached his grievances, including his explanation of untimeliness that he feared retaliation. *Id*. The defendants moved to dismiss for failure to properly exhaust. *Id*. at 986.

The Ninth Circuit adopted the Eleventh Circuit's test for determining when administrative remedies are unavailable as a result of a threat of retaliation. *Id*. at 987. First, the "prisoner must provide a basis for the court to find that he actually believed prison officials would retaliate against him if he filed a grievance." *Id*. "If the prisoner makes this showing, he

must then demonstrate that his belief was objectively reasonable." *Id*. "That is, there must be some basis in the record for the district court to conclude that a reasonable prisoner of ordinary firmness would have believed that the prison official's action communicated a threat not to use the prison's grievance procedure and that the threatened retaliation was of sufficient severity to deter a reasonable prisoner from filing a grievance." *Id*.

In *McBride*, the court concluded that the inmate satisfied the subjective prong when he said he interpreted the defendants' statement that he was "lucky" and his injuries "could have been much worse" as threatening retaliation if he used the grievance system. *Id*. at 988. With respect to the objective prong, however, the Ninth Circuit found the inmate did not make the required showing. They considered "whether the guards' statements could reasonably be viewed as threats of retaliation if McBride filed a grievance." *Id*. While "the threat need not explicitly reference the grievance system in order to deter a reasonable inmate from filing a grievance, … there must be some basis in the record from which the district court could determine that a reasonable prisoner of ordinary firmness would have understood the prison official's actions to threaten retaliation if the prisoner chose to utilize the prison's grievance system." *Id*. The court said that just because the guards who allegedly beat him made these statements did not render the grievance system unavailable, objectively speaking. *Id*. "There is no reason to allow inmates to avoid filing requirements on the basis of hostile interactions with guards when the interaction has no apparent relation to the use of the grievance system." *Id*.

Here, Plaintiff states in his opposition that he was, and is, in fear of his safety and life and would have been retaliated against by Kersten if he included these facts in his grievance. (ECF No. 18 at 2.) He includes a statement in his affidavit that when he interacted with Kersten on July 1, 2015, Kersten specifically warned him against filing any more grievances or civil complaints. (ECF No. 18 at 3.)

The undisputed evidence submitted by Plaintiff, however, also demonstrates that Plaintiff did in fact proceed with filing a grievance against Kersten, which directly contradicts the argument he makes now that he believed Kersten would retaliate against him if he filed a grievance. While Plaintiff attempts to argue that he could not include these additional details out

- 11 -

of fear of retaliation, that is simply untenable when the actual grievance he filed squarely accuses Kersten of misconduct, and utilizes the words retaliation and harassment. Plaintiff cannot manufacture a genuine dispute of material fact, particularly when that fact is directly refuted by his own evidence. *See e.g. S.A. Empresa De Viacao Aerea Rio Grandense (Varig Airlines) v. Walter Kidde & Co., Inc.*, 690 F.2d 1235, 1238 (9th Cir. 1982) (citations omitted); *see also Anderson*, 477 U.S. at 249-50 ("If the evidence is merely colorable or is not significantly probative, summary judgment may be granted.").

To the extent Plaintiff states that he was warned by other prison officials that he would be "cuffed" and taken to segregation if he continued to complain about Kersten (ECF No. 18 at 4), he provides no factual context or timeframe for these statements so as to demonstrate that they caused him to believe he could not utilize the grievance process here. Moreover, he still went ahead with filing the grievance against Kersten.

Plaintiff references a previous grievance he had filed against Kersten stemming from a confrontation the two had in July of 2014, but this grievance centers around a housing move Plaintiff had refused and in response Kersten allegedly stood in front of Plaintiff and told him to "stand up and take a swing at him." (ECF No. 18 at 8.) When Plaintiff did not do so, Kersten called him a "fag" and "chicken shit." (*Id*.) They then had a verbal confrontation, and Officer Atwood wheeled Plaintiff away to diffuse the situation. (*Id*.) This interaction, while undoubtedly unpleasant for Plaintiff, does not reveal a basis for the court to conclude that Plaintiff subjectively believed Kersten would retaliate against him if he filed a grievance. Plaintiff went ahead with filing the grievance against Kersten in that instance, and in that interaction there was no reference to filing grievances or any other basis for the court to conclude, subjectively as to Plaintiff or objectively, that the conduct could be taken as a threat against using the grievance process.

Plaintiff provides an affidavit from another inmate discussing a situation which the inmate perceived Kersten as acting as inappropriate and harassing (ECF No. 18 at 36-37), but this does not show anything with respect to Plaintiff's subjective state of mind. Nor does it show that a prisoner of ordinary firmness would have thought he could not use the prison grievance

process under the circumstances alleged by Plaintiff.

Finally, Plaintiff references informal grievances he filed against officer Atwood. (ECF No. 18 at 40-53.) A December 25, 2014 grievance references an instance where Atwood allegedly stared at Plaintiff, asked him if he had a problem, made Plaintiff go talk to a senior officer, and then dismissed him when Plaintiff attempted to explain his version of events. (*Id.* at 50-51.) It also asserted that on December 8, 2014, Atwood confronted him and said: "good morning sunshine," which Plaintiff believed was said based on his sexuality and in retaliation for a PREA complaint filed against Kersten and Atwood. (*Id.* at 52.)

The first incident described in the December 25, 2014 grievance has no connection to Kersten. With respect to the second incident, it involved only Officer Atwood, but Plaintiff stated his belief that Atwood made the statement because of the PREA complaint he had filed against Atwood and Kersten. Plaintiff's claim that Atwood's purported conduct in December 2014 somehow made him fear filing a grievance against Kersten in July 2015 is uncorroborated and attenuated.

Next, a September 27, 2016 grievance alleged that Atwood called Plaintiff a "rat" in front of other inmates (*id*. at 41-42), and in an October 7, 2016 grievance, Plaintiff alleged that Atwood had called him a "snitch" in front of other inmates (*id*. at 43-46). Neither of these grievances have anything substantively to do with Kersten. Plaintiff makes an uncorroborated claim that Kersten and Atwood were partners at some point, but makes no factual connection between the incidents.

The grievances against Atwood do not show either that Plaintiff subjectively believed *Kersten* threatened him from using the grievance process or that an inmate of ordinary firmness would have understood Atwood's action to threaten retaliation if the prisoner chose to use the grievance system.

In sum, Plaintiff satisfies neither the subjective nor the objective prongs of *McBride*; therefore, it cannot be said that the grievance process was unavailable to him due to a threat of retaliation by Kersten. As a result, Kersten's motion should be granted. While the failure to exhaust normally results in a dismissal without prejudice, AR 740 gives an inmate six months to

file an informal level grievance involving a civil rights claim. (ECF No. 16-1 at 6, AR 740.05.4.A.) As such, Plaintiff would be time-barred from re-initiating the grievance process as to these claims now. Therefore, summary judgment and dismissal of the claims with prejudice is appropriate here.

### IV. RECOMMENDATION

**IT IS HEREBY RECOMMENDED** that the District Judge enter an order **GRANTING** Defendant Kersten's Motion for Summary Judgment (ECF No. 16).

Plaintiff's cross-motion for summary judgment (ECF No. 21) should be **DENIED AS MOOT** as the court considered it as Plaintiff's effort to properly address the assertions of fact made in Kersten's motion for summary judgment under Rule 56(e)(1).

The parties should be aware of the following:

1. That they may file, pursuant to 28 U.S.C. § 636(b)(1)(C), specific written objections to this Report and Recommendation within fourteen days of receipt. These objections should be titled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the district judge.

2. That this Report and Recommendation is not an appealable order and that any notice of appeal pursuant to Rule 4(a)(1) of the Federal Rules of Appellate Procedure should not be filed until entry of judgment by the district court.

DATED: June 7, 2017.

_William G. Cobb_
———————————————
WILLIAM G. COBB
UNITED STATES MAGISTRATE JUDGE